## STATE v. JESSUP.

No. 6193.   Decided March 27, 1940.   (100 P. 2d 969.)

*Claude Barnes,* of Salt Lake City, for appellant.

*Ellis J. Pickett* and *Orval Hafen,* both of St. George, *Joseph Chez,* Atty. Gen., and *Zelph Calder,* Asst. Atty. Gen., for respondent.

PRATT, Justice.

Richard Jessup was tried and convicted of unlawful cohabitation. He has taken this appeal.

The section of our statutes under which he was tried speaks of the crime as follows (Chap. 112, Laws of Utah 1935):

"103-51-2. Unlawful Cohabitation * * *.
"If any person cohabits with more than one person of the opposite sex, such person is guilty of a felony."

The information charges the offense as follows:

"That the said Richard Jessup on or about the 1st day of September, 1939, at Washington County, State of Utah, did cohabit with more than one person of the opposite sex."

Jessup moved to quash the information, a proceeding which has, by our statutes, been substituted for the demurrer. His motion was denied. He assigns this as error.

The evidence in the case is very meager. The county sheriff and his deputy visited the home of Richard Jessup to arrest him. When the deputy entered the place, there were two women there, one of whom left hurriedly. The other was Jessup's wife. Both were pregnant. The following day the sheriff again went to the home to serve subpoenas upon the women. Both women were there; the one who had hurriedly left the previous day, was sitting on a bed holding a baby. She answered in the affirmative, when the sheriff asked if her name was Lola Jessup. The other woman, Mrs. Jessup, bore the name of Ida. A Miss Carling testified that she had been in the neighborhood for about two weeks; that she had seen Lola, and that the latter was staying at the Richard Jessup home. Lola was a cousin of the Jessups, as well as being a cousin of Miss Carling. The latter was staying with the wife of Richard's brother, Fred Jessup, their home being next door to that of the accused. Lola was spoken of as Lola Johnson as well as Lola Jessup.

While taking him to jail, Jessup remarked that he wished people would leave them alone. He said they were being persecuted for the same thing that their fathers had done, and added:

"We believe in living the laws of God. The laws of man are man-made laws. We believe in living according to the laws of God."

When the State had rested after proving these facts, Jessup moved for a directed verdict. His motion was denied. He assigns this as error.

Let us consider first the motion to quash the information. It is elemental that one accused is entitled to notice of the particular offense with which he is charged, that he may properly prepare his defense. Such notice is fatally defective if it merely specifies generally the kind of an offense committed. To charge in generalities defeats the very purpose of requiring a pleading. The information in this case failed to include the simple requirements of the forms prescribed in Section 105-21-47, Laws of Utah 1935, c. 118, in each of which the name of the victim, or other party whose participation is essential to constitute the acts an offense, is given. May we, also invite attention to Section 105-21-22 of the same laws upon the question of use of names, where they may be unknown.

Parenthetically, may it be said that the pleader before the committing magistrate was far more cautious. He not only included the names of the women, but ingenuously made certain of their sex. He pleaded:

"* * * commit the crime of cohabint (sic) with more than one person of the opposite sex, to wit, with first doe and second doe * * *," followed by the names.

It has been suggested that if appellant objected to the lack of names in the information he should have demanded a bill of particulars. The function of a bill of particulars is not that of compelling the defense to aid the prosecution in stating a cause of action. The burden of stating such a cause rests upon the shoulders of the prosecution, and until it is stated to the extent required by our simple form of criminal pleading, the question of whether or not a bill of particulars is prerequisite to further action on behalf of the accused, has not arisen.

The definition of cohabitation given by our statute is so general that to limit the information to it, word for word, states no more than a class of crimes. In fact, it is gravely questionable whether the statute states the offense it was intended to cover. It would appear that some attention should have been given to the element of time. If a man marries and lives with a second wife after the death of, or divorce from, his first, he falls within the definition of the statute; yet all must concede that it was not the intention of the Legislature to make such relationships the bases of criminal offenses. (Note the wording of the Edmunds Anti-Polygamy Law on page 56 of 116 U. S. 55, on page 279 of 6 S. Ct. 278, 29 L. Ed. 561).

The motion to quash the information should have been granted and in view of the fact that a preliminary hearing was waived upon a proper complaint so far as names are concerned, the lower court should have directed the filing of another information. Section 105-23-8, Laws of Utah 1935.

Now as to the motion for a directed verdict. Unlawful cohabitation is proved by facts showing a course of conduct that to all outward appearances convinces one that the parties are living together as man and wives. Neither sexual intercourse nor actual attempted marriage are elements required as proof of the offense. Nor is the offense proved by incidents alone of improper relations. That the parties may have been seen living in the same house does not by itself prove a prima facie case. *United States* v. *Cannon*, 4 Utah 122, 131, 7 P. 369, affirmed 116 U. S. 55, 6 S. Ct. 278, 29 L. Ed. 561. *In re Snow*, 120 U. S. 274, 281 7 S. Ct. 556, 30 L. Ed. 658; Annotation 126 Am. St. Rep. 219, K; *State* v. *Graham*, 23 Utah 278, 64 P. 557; *United States* v. *Musser*, 4 Utah 153, 7 P. 389.

The facts in this case fail to bring the case within the definition. They are simple and easily understood. They are capable of so many innocent interpretations that we would not strengthen our decision by giving one or more possible analyses of them.

Holding, as we do, that the facts are insufficient to submit to a jury, the question of what was said by Jessup while being taken to jail, is immaterial. Even though his statements be treated as an admission—a conclusion for which there is no legal justification—the failure of proof of a corpus delicti nullifies them. *State* v. *Johnson,* 95 Utah 572, 83 P. 2d 1010.

The motion for a directed verdict should have been granted. The judgment of the lower court is set aside and the case remanded with directions that a judgment of not guilty be entered and the appellant discharged. As this disposes of the case, we shall not discuss the other assignments of error.

MOFFAT, C. J., and WOLFE, LARSON, and McDONOUGH, JJ., concur.